UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TODD A. BEHNKE**,                                       Case No. 1:10 CV 2105

       Plaintiff,                                Judge John R. Adams

       v.                                           REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY,**

       Defendant.                           Magistrate Judge James R. Knepp II

## Introduction

Plaintiff Todd Behnke seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

## Background

Plaintiff was 36 years old at the time of his alleged disability onset date. (Tr 25). He has a high school education. (Tr. 115). He has past work experience as a truck driver. (Tr. 46, 110).

*Treatment History*

Plaintiff was diagnosed as HIV positive in December 2003 when he was seen in the hospital for pneumonia. (Tr. 213, 241). His white blood cell count was markedly decreased, rendering him severely immunosuppressed. (Tr. 241, 383).

Dr. Jessica Wells, a physician specializing in the treatment of infectious diseases, began treating Plaintiff for HIV and neuropathy in the summer of 2006. (Tr. 354-61, 388-97, 409-11, 413-41). As Dr. Wells noted, when Plaintiff was initially diagnosed with HIV in December 2003, he had pneumocystic pneumonia, a T-Cell count of 3, and his viral load was 750,000. (Tr. 331). At that time, he met the criteria for an AIDS diagnosis, and his recovery was slow even though he was compliant with physician appointments, medications, and treatments. (*Id.*). Dr. Wells also noted Plaintiff had neuropathy "most probably related to his HIV disease." (*Id.*).

In 2006, Dr. Wells' treatment records reflect that Plaintiff was "[d]oing very well" with HIV treatment and his neuropathy was "[s]table". (Tr. 354, 388, 414-17, 419). Overall, he reported "feeling well". (Tr. 413-15). Plaintiff expressed "concerns that he cannot get a job, and needs to pay child support". (Tr. 355). In October 2006, Dr. Wells opined that Plaintiff was "currently unemployable and will be unable to work for a minimum of twelve consecutive months". (Tr. 331). The following month, she noted Plaintiff was "able to work" and "presently employed as a roofer". (Tr. 388).

The State agency sent Plaintiff for a psychological evaluation with Thomas Zeck, Ph.D. on July 13, 2006. (Tr. 319-23). Plaintiff reported he had "nothing to smile about" when he was asked about depression. Plaintiff reported his energy level was diminished and he felt regularly fatigued and lethargic. (Tr. 321). Dr. Zelt felt Plaintiff suffered from a depressive neurosis, not otherwise specified, substance abuse issues, and a personality disorder, not otherwise specified. Dr. Zeck assigned a GAF of 50. (Tr. 322). Dr. Zeck felt Plaintiff's ability to withstand the stress and pressures of work activity was mildly to moderately impaired. (Tr. 323).

Vicki Casterline, Ph.D., a state agency psychologist, reviewed the file on July 21, 2006. (Tr.

334-36). She concluded Plaintiff was mildly limited in his ability to relate to others, but capable of simple tasks. She also noted that Plaintiff was moderately limited in his ability to tolerate work stress, "and thus should have a job requiring few changes in duties, and pace which is not externally controlled." (Tr. 336).

Dr. Wells noted Plaintiff exhibited anger outbursts. "At times he has been verbally inappropriate." (Tr. 384). She also noted he was often curt in his conversation and was easily frustrated. (Tr. 385).

In March 2007, Dr. Wells' nurse, Deborah Ewers, R.N., completed an assessment of Plaintiff's functional abilities. (Tr. 409-11). Dr. Wells affirmed this assessment in March 2009 by signing Nurse Ewers' assessment and indicating "I agree above". (Tr. 445). Nurse Ewers confirmed the diagnosis of HIV. (Tr. 443). She noted Plaintiff had experienced recurrent bacterial pneumonia, but was only hospitalized once. (Tr. 444). She noted he suffered from significant weakness but tolerated his medications well. Nurse Ewers' assessment indicated Plaintiff could only work four hours a day at a light level of exertion. (Tr. 444-45). The assessment also noted Plaintiff was markedly impaired in his ability to maintain attention and concentration, accept supervision, and get along with coworkers. The assessment also noted Plaintiff was markedly to extremely impaired in his ability to interact appropriately with the general public. (Tr. 445).

*Administrative Hearing*

The ALJ held an administrative hearing in April 2009. (Tr. 28-52). Plaintiff testified he was unable to work because his hands and feet were "numb", he got "winded easily", and he had problems concentrating "for long periods of time". (Tr. 37).

A vocational expert (VE) testified at the hearing. (Tr. 46-50, 73-74). The ALJ presented the

3

VE with a hypothetical individual sharing Plaintiff's vocational profile and who was capable of performing a limited range of light, unskilled work. (Tr. 47-49). The VE testified the hypothetical individual could perform jobs that existed in the national economy, including gasket inspector (approximately 280,000 jobs); weld inspector (approximately 38,000 jobs); and final inspector (approximately 37,000 jobs). (*Id.*). The VE also testified that if the hypothetical person were off task even ten percent of the time, it would eliminate the jobs identified. (Tr. 50).

*ALJ's Decision*

The ALJ determined that Plaintiff suffered from the following severe impairments: HIV/AIDS, depressive disorder, personality disorder, and polysubstance dependence. (Tr. 18). He found that, despite these impairments, Plaintiff retained the residual functional capacity (RFC) to perform a limited range of light, unskilled work. (Tr. 19-20). The ALJ concluded Plaintiff was not disabled because he could perform jobs that existed in significant numbers in the national economy. (Tr. 25-26).

**Standard of Review**

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474

F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## Standard of Disability

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the

5

national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## Discussion

Plaintiff presents three arguments against the ALJ's denial of benefits:

1. The ALJ erred in his consideration of treating physician Wells' opinion concerning attention and concentration;

2. The ALJ's residual functional capacity finding (RFC) is not supported by substantial evidence; and

3. The ALJ erred by relying on vocational testimony that conflicts with the Dictionary of Occupational Titles (DOT).

*Treating Physican Rule*

Plaintiff argues the ALJ erred by failing to provide good reasons to give his treating physician, Dr. Wells, little weight with regard to her opinion on his limitations of attention and concentration. (Doc. 12, at 9-11).

An ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 404.927(d). In determining how much weight to afford a particular opinion, an ALJ must consider: 1) examining relationship; 2) treatment relationship – length, frequency, nature and extent; 3) supportability; 4) consistency; and 5) specialization. *Id.*; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Generally, the medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also*

SSR 96-2p. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.* The ALJ must give "good reasons" for the weight it gives a treating physician's opinion. *Id.* Failure to do so requires remand. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409-10 (6th Cir. 2009).

Here, Plaintiff argues that not only did the ALJ fail to give good reasons to give little weight to Dr. Wells' opinion regarding attention and concentration, he failed to give *any* reasons at all. (Doc. 12, at 9-11). If this were the case, remand would be required. But it is not the case. Yes, Plaintiff is correct that the ALJ did not single out and explain why he gave little weight to the one instance that Dr. Wells found Plaintiff had limitations with attention or concentration. Instead, the ALJ explained he gave little weight to *all* of Dr. Wells' non-exertional or mental limitations:

> [N]ot only are [Drs. Zeck and Casterline's opinions] consistent with the evidence as a whole, but both . . . practice in the area of psychology, an area outside of Dr. Wells' expertise. Although Dr. Wells is the treating physician, her assessment of [Plaintiff's] mental limitations is not supported by her own progress notes. Throughout the course of her treatment of [Plaintiff], Dr. Wells' notes did not indicate significant concerns pertaining to his mental state. The only indication of such a concern was in the reports made to the BDD.

(Tr. 24). The last reason provided by the ALJ above applies to the attention and concentration limitations Plaintiff is concerned about. The only instance of Dr. Wells opining negatively about Plaintiff's ability to maintain attention and concentration is found in a form filled out by a registered

7

nurse, with Dr. Wells' signature and the words "I agree above". (Tr. 445). Dr. Wells elsewhere indicates that her office "manages [Plaintiff's] medical – basically HIV and related conditions", implying her office was not comfortable making a diagnosis relating to Plaintiff's mental limitations. (Tr. 386). The ALJ's reason, that Dr. Wells' mental limitations are inconsistent with her treatment notes, applies to the limitation on attention and concentration, and is a "good reason" for giving it little weight. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (ALJ properly discounted opinion that was not supported by physician's own treatment records).

*RFC Finding*

Plaintiff argues the ALJ "did not fully incorporate the limitations identified by the State agency reviewing psychologist", Dr. Casterline, whose opinion the ALJ gave "great weight". (Doc. 12, at 11- 13).

Plaintiff argues the ALJ's RFC formulation did not accurately reflect the limitations found by Dr. Casterline. Specifically, Dr. Casterline opined that because Plaintiff "would be moderately limited in tolerating work stress", he "should have a job requiring few changes in duties". (Tr. 336). The ALJ, in his RFC finding, restricted Plaintiff to "unskilled work involving only simple, repetitive tasks with no more than routine changes in the workplace." (Tr. 19-20, 23). Dr. Casterline further opined that because of Plaintiff's stress limitation, he should have a job with a "pace which is not externally controlled." (Tr. 336). The ALJ restricted Plaintiff to "low stress work, that is, work that does not involve high production quotas." (Tr. 19-20, 23).

There is a difference between medical opinions and an RFC finding. The ALJ, not a medical source, is tasked with making the latter determination. 20 C.F.R. §§ 404.1546(c), 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining

a claimant's [RFC] rests with the ALJ, not a physician."). The two assessments are not synonymous, and need not be identical to be compatible. SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the [RFC] assessment.). The ALJ's formulations in his RFC finding adequately reflect the limitations imposed by Dr. Casterline. Dr. Casterline found a moderate limitation in Plaintiff's ability to handle work stress, and in explaining that limitation, opined that it meant Plaintiff could only handle "few changes" and a "pace . . . not externally controlled". (Tr. 336). The ALJ accounted for that stress limitation, and further imposed limitations on pace and changes in the workplace. Although the ALJ did not use the exact same language as Dr. Casterline, his RFC finding accurately reflects her imposed limitations.

*Vocational Testimony*

Plaintiff argues the VE's testimony in response to the ALJ's hypothetical question conflicted with the DOT. Therefore, Plaintiff argues, the ALJ erred by relying on the VE's testimony. However, Plaintiff has waived this argument by failing to bring it before the ALJ.[1]

Social Security Ruling 00-4p provides:

> When there is an *apparent* unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . . At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

---

[1]In discussing Plaintiff's waiver, the Court will assume for the sake of argument Plaintiff correctly identifies a conflict between the VE testimony and the DOT. This is done simply for ease of discussion, and the undersigned expresses no opinion as to whether or not such an inconsistency exists.

SSR 00-4p, 2000 WL 1898704, *2 (emphasis added). Without such a conflict being *apparent* at the hearing, through Plaintiff's counsel raising the inconsistency or otherwise, the ALJ is entitled to rely on the VE's testimony. *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the Dictionary's".); *see also Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir.2008) ("nothing in the applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge.").

Here, the ALJ inquired on the record whether the VE's testimony about the three jobs Plaintiff now challenges was consistent with the DOT, and the VE answered that it was. (Tr. 49). Plaintiff's counsel had an opportunity to question the VE, and did so, asking one question unrelated to whether the VE's testimony was consistent with the DOT. (Tr. 50). The ALJ gave Plaintiff's counsel a further opportunity to bring to his attention anything that had not been covered in the hearing, and Plaintiff's counsel did not do so. (*Id.*). The hearing then ended without any conflict between the VE's testimony and the DOT being made "apparent". Plaintiff first raised the issue of an inconsistency in his appeal from the ALJ's decision to the Appeals Council. (Tr. 199-200).

Because the ALJ had before him no apparent discrepancy between the VE testimony and the DOT, he was entitled to rely on the VE's testimony, and did not commit error by doing so. *Donahue*, 279 F.3d at 446-47 ("Raising a discrepancy only after the hearing, as [Claimant's] lawyer did, is too late. . . . [W]ith no questions asked that reveal any shortcomings in the vocational expert's data or reasoning-the ALJ was entitled to reach the conclusion she did.").

10

**Conclusion and Recommendation**

Following review of the arguments presented, the record, and applicable law, this Court finds the Commissioner's decision denying DIB and SSI benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

s/James R. Knepp II<br>United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).